LEIDERSDORF and another vs. FLINT.

*October 16 — November 10, 1880.*

TRADE-MARK. *(1) Rule as to demurrer to the complaint in actions to restrain use of trade-mark. (2) What relief may be demanded in such cases.*

1. In an action to restrain defendant from using a trade-mark alleged to have been devised by him in imitation of that of plaintiffs, and to be in fact deceptive to purchasers, etc., if *fac-similes* of the two trade-marks

Leidersdorf and another vs. Flint.

are annexed to the complaint, it will not be held, *on demurrer*, that the one is not sufficiently similar to the other to mislead, and to constitute an infringement, unless the dissimilarity is so marked as to leave no doubt in the mind of the court; but the question of infringement will be reserved until the coming in of the proofs.

2. In such an action, plaintiff may, without misjoinder, ask for an accounting as to profits, and for damages.

APPEAL from the County Court of *Milwaukee* County.

The action is brought to restrain the infringement by defendant of plaintiffs' trade-mark, and for damages. The parties are dealers in tobacco in the city of Milwaukee. It is stated in the complaint that the plaintiffs and their predecessors, to whose rights they have succeeded, for eleven years last past " have manufactured and sold a special article of smoking tobacco, put up in packages of a certain form, in paper wrappers of a particular color and mark, and stamped with the words and name 'Nigger-Hair Smoking Tobacco,' and otherwise distinctively marked and designated as hereinafter set forth; that during all the said period of eleven years they have exclusively used and are now using, and had and still have the right so to use, the said name and mark hereinafter more particularly described as a trade-mark for such smoking tobacco; and that no other person than the said firm has at any time had the right to make use thereof, or of any like mark or name, or of any near resemblance thereto." Then follows a partial description of the trade-mark. A *fac-simile* of it is annexed to and made a part of the complaint. It is impracticable to reproduce it here, and, it is unnecessary to give a minute description of it. It is sufficient to state that the most marked feature of it is a representation of the head of a negro surmounted with a copious crop of wool, and having a large ring pending from the nose and another from the ear. Below the figure is the name of the brand, and the firm name and residence of the manufacturers.

The complaint further alleges that "said smoking, tobacco

is known to the trade, and to the public, and to the buyers and consumers thereof, by the name of 'Nigger-Hair Smoking Tobacco,' and by the plaintiffs' own peculiar device and trade-mark aforesaid; that the said tobacco is a low-priced tobacco, and is to a very large extent bought and consumed by a class of people who cannot read, and whose necessities and manner of living do not require them to practice more than ordinary caution when purchasing the commodities most frequently procured; and to this class of people the said tobacco has become known and is easily recognized, largely by reason of the said peculiar and distinctive trade-mark aforesaid." It is then charged that in 1878 the defendant devised a trade-mark in imitation of the plaintiffs' said mark, which he placed upon the wrappers of an inferior quality of tobacco manufactured by him, and which so closely resembled the plaintiffs' trade-mark that purchasers were deceived thereby, and bought the defendant's tobacco when they supposed they were buying the genuine "Nigger Hair." This alleged imitation represents the head of an Indian with a ring in his ear, but none in his nose. Under the vignette are the words "Big Indian" instead of "Nigger Hair," printed with similar type, and the name and residence of the manufacturer. A *fac-simile* of the defendant's mark is also annexed to the complaint, and marked "Exhibit B." That of the plaintiffs is referred to as "Exhibit A."

The complaint then proceeds as follows:

"And the plaintiffs further say they are informed and believe that said defendant so as aforesaid continued to use said imitation of plaintiffs' trade-mark, until, believing he could retain and keep the trade so as aforesaid already attracted and diverted to him by means of further using a less close and striking resemblance to plaintiffs' trade-mark, he artfully contrived and executed certain changes in his said imitation of plaintiffs' trade-mark, so as to be able to assert the pretense and excuse that he had ceased using the imitation shown at

Exhibit B, whereas, in fact, the said modification and changes were not in the chief characteristic of said label, and the same still presents to the public the impression and idea that the same is the badge or mark of the plaintiffs so as aforesaid described, and now does strongly resemble the plaintiffs' trademark in all its chief and most essential features; a copy of which said second device of the defendant, and a specimen of the same, together with its paper wrapper, is hereto attached and marked 'Exhibit C.'·

"And the plaintiffs further allege that the imitations aforesaid are calculated to deceive the general public, and especially the small purchasers and consumers of tobacco, and that the form, size, color and devices of the packages of tobacco of the defendant are intended to be and are in such imitation of and resemblance to those of the plaintiffs, as are contrived and calculated to, and actually do, mislead the public in that regard, and cause among consumers the idea that the two articles of tobacco are identical, and are manufactured by the plaintiffs.

"And the plaintiffs further say that for several months last past, beginning at a date which is unknown to them, the defendant has manufactured and sold smoking tobacco in packages of the kinds above described, and has, as they are informed and believe, put forth the same in the market; and has endeavored to procure others to sell and deal in the same, as the identical 'Nigger-Hair' tobacco of the plaintiffs. And the plaintiffs are informed and believe that in many instances the said tobacco of the-defendant has been sold as and for the said Nigger-Hair tobacco, on account of the similarity of the appearance of the packages and marks as hereinbefore stated."

Exhibit C is very much like Exhibit B, except that it displays no ring in the ear of the Indian, and the words "Big Indian" thereon are placed in a different position.

The prayer of the complaint is for an injunction, for an accounting as to profits, and for damages. The defendant demurred to the complaint on the grounds — *first*, that it

Leidersdorf and another vs. Flint.

does not state facts sufficient to constitute a cause of action; and *second*, that several causes of action are improperly united therein. The court overruled the demurrer, and the defendant appealed from the order.

For the appellant there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Jenkins*.

For the respondents there was a brief by *Carpenter & Smiths*, and oral argument by *Winfield Smith*.

LYON, J. Doubtless if the *fac-similes* of the various trademarks of the parties are disregarded, the complaint states a cause of action in equity for an injunction to restrain the infringement of the plaintiffs' trade-mark. This is not controverted. But it is urged in support of the demurrer, that, inasmuch as these marks are attached to and really made a part of the complaint, they cannot be disregarded, but have the force and effect of averments; and that they show on their face, notwithstanding averments to the contrary, that no one could be misled, as charged, by the marks used by the defendant. It may well be that two trade-marks are so entirely dissimilar that a court can properly say on demurrer that one is not and can not be an infringement of the other; and this although the pleading demurred to avers that it is an infringement and misleads the public. But to justify such a ruling the dissimilarity should be so marked as to leave no doubt in the mind of the court.

We do not think this is such a case. Although in several particulars there are differences between Exhibit A on the one hand, and Exhibits B and C on the other (and this is especially so as between Exhibits A and C), yet there are some points of resemblance common to all of them. By a mere inspection of them we are not prepared to determine whether B and C, or either of them, so nearly resemble the plaintiffs' trade-mark that ordinary purchasers, proceeding with ordinary caution, are likely to be misled thereby. This, we understand, is the test

of infringement in such cases. Much less are we prepared to hold that there is no such resemblance in the face of the positive averments in the complaint that there is. From an examination of some of the cases we are led to believe that the usual practice is to reserve the question of infringement until the coming in of the proofs. In cases of any doubt this seems to be the better and safer practice; for the evidence will undoubtedly throw more or less light on the question. We have concluded to adopt that course in this case. Hence, without intimating any opinion as to whether the *fac-similes* of defendant's trade-marks, considered alone, are or are not infringements of plaintiffs' trade-mark, we hold, for the purposes of the demurrer, that the complaint states a cause of action in equity. This leaves the question of infringement to be determined as an original question upon the pleadings and proofs, in case the defendant answers denying the infringement.

The other cause of demurrer assigned, to wit, the improper joinder of several causes of action, was not argued by the learned counsel for the defendant. It is quite apparent that there is no such misjoinder in the complaint.

*By the Court.*— The order overruling the demurrer is affirmed.